92 F.3d 51
 1996 Copr.L.Dec. P 27,551, 39 U.S.P.Q.2d 1768
 Jimmy MERCHANT and Herman Santiago,
Plaintiffs-Appellees-Cross-Appellants,
v.
Morris LEVY, Big Seven Music Corp. and Roulette Records,
Inc., Defendants-Appellants-Cross-Appellees,
and
Windswept Pacific Entertainment Co.,
Intervenor-Defendant-Appellant-Cross-Appellee.
 Nos. 1322, 1653, 1768, Dockets 95-7763L, 95-7765CON, 95-7767XAP.
 United States Court of Appeals,
Second Circuit.
 Argued May 2, 1996.
Decided Aug. 7, 1996.
 
 James B. Sheinbaum, New York City, Scott L. Baker, New York City (Leon B. Borstein, Borstein, Sheinbaum & Lurie, New York City; Alan L. Shulman, Silverman & Shulman, New York City, on the briefs), for defendants-appellants-cross-appellees, Morris Levy, Big Seven Music Corp., Roulette Records, Inc., and intervenor-defendant-appellant-cross-appellee Windswept Pacific Entertainment Co.
 Robert W. Cinque, New York City (James P. Cinque, Cinque & Cinque, New York City, on the brief), for plaintiffs-appellees-cross-appellants.
 Before: NEWMAN, Chief Judge, FEINBERG and OAKES, Circuit Judges.
 JON O. NEWMAN, Chief Judge.
 
 
 1
 This appeal concerns the appropriate time period in which those claiming to be co-authors of a work whose copyright is registered to another person may sue to establish their co-ownership rights. Defendants-appellants-cross-appellees Morris Levy, Big Seven Music Corp., and Roulette Records, Inc. (the "Levy Defendants") and intervenor-defendant-appellant-cross-appellee Windswept Pacific Entertainment Co. ("Windswept") (collectively, the "Defendants") appeal from the judgment of the District Court for the Southern District of New York (Naomi Reice Buchwald, Chief Magistrate Judge) entered on June 28, 1995. After a trial on the issue of liability was held in part before a jury and in part before the Court, the Court declared plaintiffs-appellees-cross-appellants Jimmy Merchant and Herman Santiago ("Plaintiffs") co-authors with Frankie Lymon of the well-known musical composition Why Do Fools Fall in Love ("Fools "), and co-owners of the copyright therein. Merchant v. Lymon, 828 F.Supp. 1048 (S.D.N.Y.1993). The Court awarded Plaintiffs an undivided one-half interest in the copyright of Fools and monetary damages that accrued within three years of the filing of the lawsuit. We agree with Defendants that Plaintiffs' claim seeking a declaration of co-ownership rights based on their co-authorship of Fools is time-barred by the three-year statute of limitations, and we therefore reverse the judgment of the District Court.
 
 Background
 
 2
 Plaintiffs Merchant and Santiago are two of the original members of the singing group "The Teenagers," which was formed in 1955. Plaintiffs testified that in 1955 they jointly wrote the initial version of the song Fools. Frankie Lymon made a number of changes to the song when he subsequently joined the group, which then became known as "Frankie Lymon and The Teenagers." The jury found that Merchant, Santiago, and Lymon were co-authors of Fools. At the time, Lymon was 12 years old and Plaintiffs were each 15.
 
 
 3
 In 1956 the Teenagers recorded Fools for Gee Records, then owned and operated by George Goldner, now deceased. Plaintiffs testified that they relied upon Goldner to handle the formalities of copyrighting the song, and that Goldner informed them that only two of the three authors could be listed on the copyright. Subsequently, Goldner filed the Fools copyright with the Copyright Office in 1956, listing himself and Lymon as sole co-authors. The Levy Defendants maintain that Goldner was properly listed as an author because he was personally involved in writing and arranging Fools. The Levy Defendants also contend that Goldner was a co-author of Fools under the "work for hire" doctrine because, during the Fools recording session, a saxophone solo composed by a studio musician was incorporated into the song. The jury, however, found that Goldner was not an author of Fools.
 
 
 4
 Sometime in the 1950s Lymon agreed to let Goldner exploit Lymon's interest in the song. In 1968 Lymon died, survived by his wife Emira Lymon.
 
 
 5
 In 1964 defendant Morris Levy purchased Goldner's interest in several music companies, including the music publishing company that held the copyright for Fools. In a letter to the Copyright Office dated June 24, 1965, Goldner stated that Levy, rather than Goldner, had co-authored Fools with Lymon. The copyright registration was amended to reflect this statement and, thereafter, the copyright was held by Levy's company, Big Seven Music.[1]
 
 
 6
 Although Fools became a hit and continues to be popular today (Diana Ross has recorded a popular version), Plaintiffs have never received any royalties from their claimed co-authorship of Fools.
 
 
 7
 Plaintiffs reached the age of majority in 1961. They testified that on several occasions in the 1960s they contacted Goldner, and then Levy, to inquire about royalty payments, but to no avail. The jury found that Goldner and Levy deliberately concealed from Plaintiffs the accrual of royalties. The jury also found, however, that the only period during which Plaintiffs did not know, and could not have known with the exercise of reasonable diligence, that royalties to which they were entitled had accrued lasted from 1955 to 1961, while Plaintiffs were underage.
 
 
 8
 Plaintiffs also testified that they were afraid of Levy and that this fear made them reluctant to press their claims. Santiago testified that Levy threatened him in 1969, and Merchant testified that Levy threatened to kill him when, in 1977, he inquired about royalties. Plaintiffs assert that Levy was closely affiliated with organized crime and connected to a number of violent incidents. Levy was convicted in the late 1980s on federal extortion charges and sentenced to ten years in prison. The jury found that Levy threatened Plaintiffs with physical force and that Plaintiffs reasonably refrained from commencing suit because of the threats during a period that began in 1969 and lasted until December 24, 1984.[2]
 
 
 9
 Beginning in the late 1970s, Plaintiffs took various steps in pursuit of their claim, including hiring an attorney and investigator to look into the status of the copyright. Plaintiffs did not take formal legal action, however, until 1987.
 
 A. Procedural History
 
 10
 Plaintiffs brought the instant Complaint against the Levy Defendants and Emira Lymon on October 7, 1987.[3] Plaintiffs asked for a declaration that they were co-owners with Lymon of the copyright to Fools and for an accounting of royalties. Plaintiffs also alleged copyright infringement, Sherman Act and Lanham Act violations, unfair competition, fraud and misappropriation, and negligence and breach of fiduciary duty. Before trial the District Court (Vincent L. Broderick, Judge) dismissed all claims against Emira Lymon, but allowed the action to proceed against the Levy Defendants.
 
 
 11
 By agreement of the parties, trial was held in part before a jury and in part before now-Chief Magistrate Judge Buchwald. The jury's findings, as already noted, focused on the issues of authorship, fraudulent concealment, and duress. The parties agreed that, based on the jury's findings, the Court would make final rulings on whether Plaintiffs were entitled to an ownership interest in the Fools copyright, and would decide issues relating to the statute of limitations, equitable estoppel, and laches. The Court was also to decide, as fact-finder, whether Plaintiffs were entitled to judgment on their copyright infringement, Lanham Act, and common law unfair competition claims.[4]
 
 
 12
 After the jury's verdict, the Levy Defendants argued in post-trial motions that they were entitled to a new trial on the co-authorship issue, and to judgment as a matter of law (a) that the doctrines of laches and equitable estoppel barred Plaintiffs' claims and (b) that Plaintiffs were not victims of duress.
 
 
 13
 The Court denied the Levy Defendants' motion for a new trial on the co-authorship issue, ruling that the jury's findings were well-supported. Merchant, 828 F.Supp. at 1058. The Court then granted judgment in favor of the Levy Defendants on the claims of copyright infringement, Lanham Act violations, and unfair competition. Id. at 1058-60.
 
 
 14
 The Court granted Plaintiffs' basic request for a declaration of copyright co-ownership, rejecting the three defenses advanced by the Levy Defendants, all based on the long delay in Plaintiffs' assertion of their claim.
 
 
 15
 1. Duress and Statute of Limitations. The Court interpreted the three-year statute of limitations, applicable to civil copyright actions, 17 U.S.C. § 507(b), as limiting Plaintiffs' recovery to damages accruing within three years of the filing of the suit, rather than as an absolute bar to Plaintiffs' cause of action. Merchant, 828 F.Supp. at 1056. The important question for the Court then became whether the statute of limitations had been tolled for any period before the filing of the suit, thereby allowing Plaintiffs to recover damages that accrued even prior to three years before the suit. Id.
 
 
 16
 The Court held that in order to toll a statute of limitations, "the duress experienced by the injured party must have been operating at the time the original cause of action arose and must be continuous." Id. at 1061. The Court then found that from 1961, the time the cause of action arose (after Plaintiffs' majority), until at least 1969, the time of the alleged threat to Santiago, there was no evidence of duress, and therefore Plaintiffs were not entitled to a toll of the statute of limitations. Id. at 1061-62. The Court also overturned the jury's finding that Plaintiffs' fear reasonably lasted from 1969 until December 1984. The Court did not identify a specific date beyond which Plaintiffs' fear reasonably could not last, but indicated that any coercive effects dissipated in the late 1970s and early 1980s, when Plaintiffs were publicly acknowledging that Levy had "bilked" them out of their royalties. Id. Since the claim of duress was not available to toll the statute of limitations, the Court concluded that Plaintiffs were limited to damages that had accrued within three years of the suit. Id. at 1063.
 
 
 17
 2. Laches. Responding to the Levy Defendants' laches defense, the Court, relying on equity's "clean hands" principle, refused to allow the Levy Defendants to profit from their "untoward actions" by asserting laches. Id. at 1064.
 
 
 18
 3. Equitable Estoppel. As to equitable estoppel, which requires proof that a defendant was misled into justifiably believing that a plaintiff would not pursue its claims against the defendant, the Court determined that the Levy Defendants offered no evidence that Plaintiffs acted in a manner that justified a belief on the part of the Levy Defendants that their copyright was free from challenge. Id.
 
 B. Subsequent Proceedings
 
 19
 The Court subsequently amended its opinion to modify the liability of Windswept, which had intervened after acquiring the rights to Fools that Levy had acquired from Lymon. The Court ruled that Windswept was liable only for damages accruing since February 25, 1990, three years before its intervention. Merchant v. Lymon, 848 F.Supp. 29 (S.D.N.Y.1994).
 
 
 20
 In the final judgment entered on June 26, 1995, the Court awarded Plaintiffs an undivided one-half interest in the copyright to Fools.[5] The Court also ordered the Levy Defendants and Windswept to pay money damages to Plaintiffs.
 
 
 21
 On this appeal Defendants challenge the District Court's subject matter jurisdiction, and also argue that the District Court erred in not dismissing the action for a declaration of copyright co-ownership as barred by the statute of limitations or laches. Defendants additionally contend that Plaintiffs failed to establish that they are joint authors of Fools. Plaintiffs cross-appeal, arguing that the Court should have applied the tolling doctrine of equitable estoppel to allow Plaintiffs to recover damages accruing from 1969 to 1984, the period during which the jury had found that Plaintiffs were subject to duress.
 
 Discussion
 I. Subject Matter Jurisdiction
 
 22
 Defendants challenge the Court's subject matter jurisdiction, contending that the Complaint failed to allege a federal cause of action. Specifically, Defendants contend that (1) a claim for a declaration of co-ownership rights to a copyright is not a federal cause of action, and (2) Plaintiffs' other allegations based on federal law failed to state a proper claim. We reject both contentions.
 
 
 23
 Federal courts have exclusive original jurisdiction over actions arising under the federal copyright laws. See 28 U.S.C. § 1338(a). As Judge Friendly has explained, an action "arises under" the copyright laws "if the complaint is for a remedy expressly granted by the [Copyright] Act, ... or asserts a claim requiring construction of the Act ... or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim." T.B. Harms Co. v. Eliscu, 339 F.2d 823, 828 (2d Cir.1964), cert. denied, 381 U.S. 915, 85 S.Ct. 1534, 14 L.Ed.2d 435 (1965). Plaintiffs' action seeking to establish their rights to copyright co-ownership because of their status as co-authors of a joint work falls well within these jurisdictional boundaries.
 
 
 24
 The Copyright Act provides that "[c]opyright in a work protected under this title vests initially in the author or authors of the work. The authors of a joint work are co[-]owners of copyright in the work." 17 U.S.C. § 201(a).[6] Unlike a case where a dispute as to copyright ownership arises under an agreement between the parties, resolution of which depends on state contract law, see, e.g., Keith v. Scruggs, 507 F.Supp. 968, 971 (S.D.N.Y.1981), copyright ownership by reason of one's status as a co-author of a joint work arises directly from the terms of the Copyright Act itself. Because disposition of this case "involves the application and interpretation of the copyright ownership provisions ... federal jurisdiction ... [is] proper." Goodman v. Lee, 815 F.2d 1030, 1031-32 (5th Cir.1987); see Lieberman v. Estate of Chayefsky, 535 F.Supp. 90, 91 (S.D.N.Y.1982); see also 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, § 12.01[A] at 12-13 (1994) ("Nimmer ") ("better view" that "in an action for a declaratory judgment to establish the plaintiff as the defendant's co-author and for an accounting based thereon, ... federal jurisdiction is exclusively") (footnotes omitted)).
 
 
 25
 Defendants agree with Judge Friendly's formulation of the scope of federal jurisdiction, but contend that since neither "author," "joint author," nor "joint work" are defined in the Copyright Act of 1909, the resolution of Plaintiffs' claim does not depend on a construction of the copyright laws.[7] This argument is without merit. Defendants are under the mistaken impression that courts "construe" only those terms already defined in a statute. Windswept raises the additional contention that only the factual determination of whether Plaintiffs participated in composing the song is at issue in this case, and therefore construction of the copyright statute is not required. We disagree. Defendants offer a number of arguments as to why Plaintiffs' contribution to the song is legally insufficient to make them joint authors (such as whether Plaintiffs' contribution was sufficiently original), and why Goldner's contribution sufficed to make him a joint author (for example, based on the "work for hire" doctrine, 17 U.S.C. § 201(b)). The resolution of these arguments involves construing the Act. See, e.g., Childress v. Taylor, 945 F.2d 500, 505-09 (2d Cir.1991).
 
 
 26
 Since the District Court's subject matter jurisdiction over Plaintiffs' claim for a declaration of copyright co-ownership is sufficient to confer jurisdiction over the entirety of Plaintiffs' Complaint, there is no need to consider Defendants' jurisdictional attack on Plaintiffs' other claims. Nevertheless, to the extent that Defendants are contending that other claims were not properly pleaded as federal claims, we note that as a general rule "the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946).
 
 II. Statute of Limitations
 
 27
 We come finally to the dispositive issue. Plaintiffs filed the instant suit in 1987, primarily seeking a declaration of their copyright ownership rights and an accounting of profits. Civil actions under the Copyright Act are subject to a three-year statute of limitations. 17 U.S.C. § 507(b). Defendants argue that since Plaintiffs did not institute suit for a declaration of copyright co-ownership within three years of the accrual of their claim, they are now time-barred.
 
 
 28
 A cause of action accrues when a plaintiff knows or has reason to know of the injury upon which the claim is premised. Stone v. Williams, 970 F.2d 1043, 1048 (2d Cir.1992), cert. denied, 508 U.S. 906, 113 S.Ct. 2331, 124 L.Ed.2d 243 (1993). The jury found that Plaintiffs were charged with knowledge of their claim as of 1961, the year they attained the age of majority. Thus, Plaintiffs' claim accrued in 1961, but they did not initiate suit until 26 years later. Though Plaintiffs contend on appeal that the statute was tolled, the basis for such tolling, duress, did not arise until 1969, ending in 1984. By 1969, however, the three-year statute of limitations had long since expired.
 
 
 29
 The District Court nevertheless awarded Plaintiffs a declaration of co-ownership rights and damages for a time period beginning three years before the commencement of their suit. The Court relied on our decision in Stone, supra. That decision, however, which was based on "highly idiosyncratic facts," 3 Nimmer, supra, § 12.05 at 12-108 n. 2.2, does not insulate all civil actions under the copyright law from the general three-year statute of limitations. Rather, Stone stands for the narrow proposition that, in certain situations, the statute of limitations will not be applied to defeat the copyright co-ownership claim of an author's relative accruing more than three years before the lawsuit where uncertainty surrounded the relative's status as a member of the author's family. Instead, if the relative prevails on the merits and if the equities permit, the Court will grant the relative a declaration of copyright co-ownership, but permit damages only for the period starting three years prior to the suit. See Stone, 970 F.2d at 1051.
 
 
 30
 Unlike Stone, where the copyright co-ownership claim was based on plaintiff's uncertain status as an heir, no similar uncertainty exists as to co-ownership rights based on co-authorship. A co-author knows that he or she jointly created a work from the moment of its creation. Accordingly, the concerns motivating our decision in Stone are not present here. We hold that plaintiffs claiming to be co-authors are time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and any remedies that would flow from such a declaration. See Zuill v. Shanahan, 80 F.3d 1366, 1369 (9th Cir.1996). Our conclusion promotes the principles of repose integral to a properly functioning copyright market.[8] Plaintiffs' suit is therefore barred by the statute of limitations, and we need not discuss the other issues advanced by the parties. The judgment of the District Court is reversed, and the case is remanded with directions to dismiss the complaint.
 
 
 
 [1]
 Plaintiffs state that defendant Roulette Records, Inc., another company owned by Levy, participated in wrongfully withholding from Plaintiffs their interest in the copyright
 
 
 [2]
 On that date Plaintiffs' former attorney filed a letter with the Copyright Office challenging the registration of another song allegedly written by Plaintiffs that Goldner had transferred to Levy's name
 
 
 [3]
 Broadcast Music, Inc. was also initially included as a defendant
 
 
 [4]
 The other law claims had been previously dismissed for various reasons, and are not at issue on this appeal
 
 
 [5]
 Although Plaintiffs contended that they were each entitled to a one-third share of the Fools copyright, the Court determined that only the one-half share of the copyright owned by the Levy Defendants at the commencement of the action was available as a joint remedy for Plaintiffs, since Emira Lymon previously had been dismissed from the suit
 
 
 [6]
 Plaintiffs' right to co-ownership of the Fools copyright is technically determined by reference to the Copyright Act of 1909, Pub.L. No. 60-349, ch. 320, 35 Stat. 1075 (1909), rather than the Copyright Act of 1976, Pub.L. No. 94-553, 90 Stat. 2541 (1976) (codified at 17 U.S.C. § 101 et seq. (1994)), since Fools was created and copyrighted before the 1976 Act went into effect, see Roth v. Pritikin, 710 F.2d 934, 938 (2d Cir.), cert. denied, 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983). However, because there is no material difference between the two Acts for the purposes of our analysis or result, for ease of reference we cite to the present Act, unless otherwise specifically noted
 
 
 [7]
 Although the Copyright Act of 1976 also does not define either "author" or "joint author," it contains a definition of "joint work." 17 U.S.C. § 101
 
 
 [8]
 We note that Plaintiffs' cause of action is not based on copyright infringement, a point Plaintiffs do not contest on appeal. Our holding here does not disturb our previous rulings that a copyright owner's suit for infringement is timely if instituted within three years of each infringing act for which relief is sought, but recovery is barred for any infringing acts occurring more than three years prior to suit. See, e.g., Stone, 970 F.2d at 1049-50 (citing Mount v. Book-of-the-Month Club, Inc., 555 F.2d 1108, 1110-11 (2d Cir.1977))