**Daniel S. DECARLO, Petitioner–Appellant,**

v.

**ARCHIE COMIC PUBLICATIONS, INC., Respondent–Appellee.**

Docket No. 01–7132.

United States Court of Appeals, Second Circuit.

June 1, 2001.

Whitney North Seymour Jr., Lady & Seymour, New York, NY; Craig A. Lady, Peter James Clines and Sharon E. Ash, on the brief, for appellant.

Lenora Herman, Grimes & Batters by, LP Mamaroneck, NY; Edmund J. Ferdinand III, on the brief, for appellee.

Present McLAUGHLIN, and POOLER, Circuit Judges, and MARTIN, District Judge.*

*SUMMARY ORDER*

PER CURIAM:

ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the order of said District Court be and it hereby is AFFIRMED.

Daniel S. DeCarlo appeals from the judgment of the United States District Court for the Southern District of New York (Kaplan, *J.*) of January 22, 2001, denying plaintiff's motion to remand to state court; granting defendant's motion for summary judgment; denying plaintiff's cross-motion for summary judgment and

---

* The Honorable John S. Martin, United States District Court Judge for the Southern District of New York, sitting by designation.

denying defendant's counterclaim for damages. For the reasons given below, we affirm.

Daniel DeCarlo is a freelance cartoonist who spent most of his working life producing comic books and strips for the defendant, Archie Comic Publications, Inc. ("Archie"). (Blue 2) At issue here is the work DeCarlo did for the Josie and the Pussycats comics. DeCarlo alleges he created and thus owns the Josie characters, while Archie alleges it owns the characters as DeCarlo's work was done on a work for hire basis. The Josie characters are ripe for economic exploitation because of the recent release of a live action motion picture by Universal studies. Archie agreed to license the characters to Universal without DeCarlo's participation.

According to DeCarlo, he began developing the character of Josie in the mid–1950s, when he was laid off during a comic book slump. (Blue 6) He credits his wife with providing the inspiration for Josie's name and trademark bouffant hairdo, as well as the Pussycats' distinctive costumes. (Id.) DeCarlo said he showed his Josie strips, including the characters of Melody and Pepper, to Richard Goldwater at Archie in 1961. (Id.) The two took the strip to King Features in an attempt to syndicate it, with no success. (Id.) Goldwater and his father, John Goldwater, an Archie's principal, then decided to publish Josie as an Archie comic book beginning in 1963. (Id.)

In October 1988, the parties executed a "Newsstand Comic Independent Contractor's Agreement," wherein DeCarlo agreed "Archie is the publisher of comic strips and comic books under its ARCHIE property of which Archie is the sole and exclusive owner." (JA 36) The parties also executed a "Revised Newsstand Comic Independent Contractor's Agreement" in December 1996, wherein DeCarlo agreed, "all

past, pending and future contributions of the contractor to the Works and Properties are and shall be Works for Hire owned by and for the benefit of Archie." (JA 46) Throughout the years, Archie licensed the Josie characters for a panoply of uses, include dolls, records and television cartoons. (Id.) In 1999, DeCarlo learned Archie licensed the Josie characters to Universal Pictures for a live action movie. (Blue 6). He then brought the instant action in state court.

DeCarlo sought a declaratory judgment and injunction to prevent Archie's wrongful use and continuing profit "from plaintiff's creation of the Josie, Melody and Pepper characters, as well as from works derived from their creation." (JA 23) DeCarlo also alleged breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty and sought the imposition of a constructive trust. (JA 24–31) Archie removed the case to the United States District Court for the Southern District of New York, alleging DeCarlo's case was really a copyright case, giving the federal courts subject matter jurisdiction. DeCarlo promptly moved for remand.

The district court denied the remand motion and granted Archie's motion dismissing the complaint on January 22, 2001. DeCarlo moved for summary reversal, which this Court denied on March 1, 2001. This expedited appeal followed.

We review the denial of a remand motion *de novo*. *Somlyo v. J. Lu–Rob Enter., Inc.*, 932 F.2d 1043 (2d Cir.1991).

■ On appeal, DeCarlo argues his complaint asserts no federal claim on its face, so that the well-pleaded complaint rule controls and his suit should be heard in state court. The essence of his state law claim is that he owns the Josie characters under state law, and Archie owns only

those rights in the characters which De-Carlo gave it through licensing agreements. "Where plaintiff's claim involves both a federal ground and a state ground, the plaintiff is free to ignore the federal question and pitch his claim on the state ground to defeat removal." *Travelers Indem. Co. v. Sarkisian*, 794 F.2d 754, 758 (2d Cir.1986) (internal citations and punctuation omitted). Thus, "removal based on federal question jurisdiction is improper unless a federal claim appears on the face of a well-pleaded complaint." *Id.* Further, "the party who brings a suit is master to decide what law he will rely on." *Id.* But, "in certain limited circumstances a plaintiff may not defeat removal by clothing a federal claim in state garb, or, as it is said, by use of 'artful pleading. . . .' The classic application of artful pleading occurs in the context of federal preemption of state law. In that circumstance a plaintiff purporting to plead a claim based on state law is necessarily relying on federal law for relief." *Id.* To determine if a pleaded state claim is actually a federal claim, we look at whether the elements of the state claim are very similar to those of a claim expressly grounded in federal law. *Id.* at 760–61. Here, DeCarlo's complaint contains numerous contentions that he created and authored the Josie characters and retains the rights to distribute those characters as he sees fit, making the elements very similar to a copyright claim. (JA 18, 19, 20, 22 ¶¶ 5, 6, 9, 20, 22) *See Merchant v. Levy*, 92 F.3d 51, 55 (2d Cir.1996) (where a party claims to own rights to a work by virtue of his status as author of the work, the action "arises directly from the terms of the Copyright Act itself" and federal jurisdiction is exclusive). Thus, the well-pleaded complaint rule does not control.

Further, as the district court also properly examined whether DeCarlo raised a cognizable state law claim, we follow suit here. DeCarlo's state law claim rests on *Fisher v. Star*, 231 N.Y. 414, 132 N.E. 133 (1921). In *Fisher*, the artist who drew the Mutt and Jeff comic strip was granted an injunction restraining publication, without the artist's consent, of Mutt and Jeff cartoons drawn by another artist. *Fisher*, 231 N.Y. at 427, 132 N.E. 133. The *Fisher* court held the cartoonist "is the owner of the property right existing in the characters represented in such figures and names. . . . Property rights in literary and other property, the product of the brain as between employer and employee, are determined by what was contemplated by the contract of employment." *Id.* at 432. *Fisher*, however, was based on a tort theory of unfair competition, which bars "passing off" the work of someone other than the author as the author's own. *Id.* at 433, 132 N.E. 133. As the *Fisher* court did not need to reach the property rights issue to support its decision, those remarks are dicta and not binding on this court. *See also Gotham Music Serv., Inc. v. Denton & Haskins Music Pub. Co.*, 259 N.Y. 86, 89, 181 N.E. 57 (1932) (no passing off when the song title in dispute was associated with the music rather than with the plaintiffs who authored the music). The district court correctly concluded DeCarlo failed to allege a cognizable claim under *Fisher*.

Finally, the district court correctly held DeCarlo's claim, on its face, raised a federal copyright issue. Under the Copyright Protection Act of 1976 (the "Act"), copyright protection attaches once the work is fixed in some tangible form, regardless of whether the copyright is registered or the work is published. 17 U.S.C. § 102(a). In this Circuit, it is settled law that the Act extends copyright protection to cartoon characters developed with sufficient particularity. *Warner Bros., Inc. v. ABC, Inc.*, 720 F.2d 231, 241 (2d Cir.1983)

(copyright law protects "not only the [character's] visual resemblance but also the totality of the character's attributes and traits."); *Detective Comics v. Bruns Publ'ns,* 111 F.2d 432, 433–34 (2d Cir. 1940) (extending copyright protection to Superman cartoon character insofar as it embodies "an arrangement of incidents and literary expressions original with the author" and enjoining portrayal of character using any of Superman's "feats of strength or powers" or "closely imitating his costume or appearance") (citing *Nichols v. Universal Pictures Corp.,* 45 F.2d 119 (2d Cir.1930) (copyright protection is granted to a character if it is developed with sufficient specificity.)). With respect to works covered by the Act, it preempts state copyright law. 17 U.S.C. § 301. The Act also extinguished all common law copyright in unpublished works, although it grandfathered in copyright protection for unpublished works created before January 1, 1978. *Id.* Therefore, as the district court aptly noted, whatever common law rights DeCarlo had in the Josie characters by virtue of his unpublished drawings were transformed into rights protected by federal copyright law by the 1976 Act.

"When a complaint alleges a claim or seeks a remedy provided by the Copyright Act, federal jurisdiction is properly invoked." *Bassett v. Mashantucket Pequot Tribe,* 204 F.3d 343, 355 (2d Cir.2000) *quoting T.B. Harms Co. v. Eliscu,* 339 F.2d 823, 824 (2d Cir.1964). Here, DeCarlo's first cause of action alleges that he created the Josie characters, licensed the characters to Archie for limited purposes and that Archie is using the characters for purposes other than the ones they are licensed for. He seeks a declaration that he is the "sole owner of the comic book characters Josie, Melody and Pepper, and has the exclusive right to use or license them for purposes other than comic strips

and comic books," as well as an injunction preventing future use by Archie and an accounting. Thus, on its face, DeCarlo's claim is based on his allegation that he created and authored the Josie characters, and therefore owns the rights to them. (JA 20 ¶¶ 5, 6, 9, 20, 22) He seeks those remedies traditionally accorded by copyright law. 17 U.S.C. § 501–504. Therefore, DeCarlo cannot find refuge in the well pleaded complaint rule and raised a claim with no cognizable grounds in state law. His complaint on its face raises a federal copyright claim. The district court thus properly found DeCarlo raised a copyright claim and refused to remand. *See also Marcus v. AT&T Corp.,* 138 F.3d 46, 54–55 (2d Cir.1998).

■ Civil actions under the Copyright Act are governed by a three-year statute of limitations. 17 U.S.C. § 507(b). A copyright cause of action accrues when a "plaintiff knows or has reason to know of the injury upon which the claim is premised." *Merchant,* 92 F.3d at 56. Authors and co-authors know they created a work from the moment of its creation. *Id.* "Plaintiffs claiming to be co-authors are time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and any remedies that would flow from such a declaration." *Id.* As the *Merchant* court stated, this "promotes the principles of repose integral to a properly functioning copyright market." *Id.* at 57. Here, DeCarlo brought suit in 1999, although he was aware of Archie's alleged infringement from at least 1963, when he read the copyright notice in *She's Josie* # 1 which gave the sole copyright in "cover and content to an Archie subsidiary." (JA 445–47) He knew of and watched the Josie and the Pussycats cartoons which ran on national television. (JA 140–41) He knew that Josie and the Pussycats were being licensed

for merchandising purposes at least since 1990. (JA 142) He signed both the 1988 and 1996 Agreements, both of which made clear that Archie viewed itself as the sole owner of the Josie characters. (JA 36–48) Therefore, the district court correctly found the copyright statute of limitations bars DeCarlo's first claim.

On appeal, DeCarlo also argues that even if his ownership suit is untimely, he can still bring a copyright suit for infringement. (Blue 23) Without reaching the merits of his position, DeCarlo cannot maintain a suit for copyright infringement because he never registered the copyrights in accordance with the statute, a necessary first step to instituting a lawsuit based on those rights. 17 U.S.C. § 411(a) ("no action for infringement of copyright in any work shall be instituted until registration of the copyright claim has been made."); *see also Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 37 n. 6 (S.D.N.Y.1992) ("copyright registration is a jurisdictional prerequisite to an infringement suit.") *aff'd* 23 F.3d 398 (2d Cir.1994) (Table No. 93–9056). Thus, his infringement argument fails.

For the reasons given above, the district court correctly found DeCarlo plead a copyright claim, properly asserted federal subject matter jurisdiction and correctly found the action barred by the statute of limitations. Further, primarily for the reasons given by the district court, we find the district court properly dismissed De-Carlo's state law claims.

We have examined DeCarlo's remaining claims and find them without merit.