[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 23, 2002
THOMAS K. KAHN
CLERK

_____

No. 01-11413
_____

D. C. Docket No. 99-00159 CV-4

RONALD G. CALHOUN,

Plaintiff-Appellant,

versus

LILLENAS PUBLISHING,

Defendant-Third-Party
Plaintiff,

NAZARENE PUBLISHING
BEACON HILL MUSIC, et al.,

Defendants-Appellees,

LIFEWAY CHRISTIAN RESOURCES
OF THE SOUTHERN BAPTIST CONVENTION,
f.k.a. the Sunday School Board of
the Southern Baptist Convention,
d.b.a. Lifeway Christian Stores,
CONVENTION PRESS, et al.,

Defendants-Appellees,

C.A. MUSIC, INC.,

Third-Party-Defendant-
Appellee.

_____

No. 01-11415

_____

D. C. Docket No. 00-00086 CV-4


RONALD G. CALHOUN,

Plaintiff-Appellant,

versus

THE SOUTHERN BAPTIST
CONVENTION LIFEWAY CHRISTIAN
RESOURCES,
d.b.a
Lifeway Christian Stores,
THE SUNDAY SCHOOL BOARD OF THE
SOUTHERN BAPTIST CONVENTION, et al.,

Defendants-Cross
Claimants-Appellees,

THE UNITED METHODIST
PUBLISHING HOUSE,
COKESBURY PUBLISHING, et al.,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Georgia

_____

**(July 23, 2002)**
Before BIRCH, CARNES and COX, Circuit Judges.

2

PER CURIAM:

This consolidated appeal arises out of a putative copyright infringement action. In his pro se action, the gravamen of which focuses upon ownership of a musical work, Ronald Calhoun appeals the district court's grant of summary judgment in favor of Lillenas Publishing Company, Nazarene Publishing House, Beacon Hill Music, Crystal Sea Recordings, Faith Music, Pilot Point Music, Psalmsinger Music, Zondervan Publishing House, John Mathias, Hardy Weathers, and Ken Bible[1], docketed as our case No. 01-11413, and The Southern Baptist Convention, Lifeway Christian Resources, The Sunday School Board of the Southern Baptist Convention Press, Broadman & Holman, Baptist Book Stores, The United Methodist Publishing House, Cokesbury Stores, Christian Copyright License International, World Music, Nelson/Word Ministry Services, Maranatha Music, Integrity Music, Integrity Church Services, Music Services, Christian Artist Music (C.A. Music), Cam Floria, Jeffery Buchan, and Bob McGee (hereinafter collectively referred to as "McGee/Assigns"), docketed as our case No. 01-11415. The district court found that Calhoun had no claim for copyright infringement

---

[1] The district court granted Calhoun's motion to dismiss Zondervan Publishing House from the action. Additionally, the court granted Lillenas permission to add C.A. Music, Inc. as a third-party defendant.

because there was insufficient evidence to show that (1) McGee had access to Calhoun's song "Before His Eyes," and (2) McGee's chorus "Emmanuel" was strikingly similar to "Before His Eyes." We AFFIRM the district court's judgment, albeit upon another basis.[2] We conclude that the evidence compels the conclusion that Calhoun's copyright claims should be barred by McGee/Assigns' claim of independent creation.[3]

## I. BACKGROUND

Calhoun wrote the song "Before His Eyes" in 1969.[4] He recorded an album containing "Before His Eyes" on the Charisma record label in 1970, and it was

---

[2] We may affirm the district court on different grounds as long as "the judgment entered is correct on any legal ground regardless of the grounds addressed, adopted or rejected by the district court." Ochran v. United States, 273 F.3d 1315, 1318 (11th Cir. 2001) (citation omitted).

[3] It should be emphasized that independent creation is *not* an affirmative defense (i.e., a claim extraneous to the plaintiff's prima facie case). Rather, independent creation attempts to prove the opposite of the Calhoun's primary claim, i.e., copying by McGee. Keeler Brass Co. v. Continental Brass Co., 862 F.2d 1063, 1066 (4th Cir. 1988).

[4] He distributed publication of his musical work in 1970 and inserted and inscribed the copyright notice to the distributed publication in accordance with the Copyright Act of 1909, § 19. Calhoun eventually filed for registration for his claim of copyright in "Before His Eyes" in 1990.

4

subsequently released to the public for sale and distribution.  Calhoun has no records of any royalties from the album.

In March of 1971, Calhoun received a writer's clearance of his composition stamped and registered with the licensing performance agency Broadcast Music Incorporated ("BMI").  BMI cleared and announced the work in their forthcoming bulletins to stations.  Calhoun promoted and performed this musical work by means of concerts, and performances in churches, and on television and radio.  However, the total amount of royalties Calhoun has received to date is $11.

In 1976, Robert McGee, then an associate pastor at The King's Temple Church[5] in Seattle, Washington,  wrote the chorus "Emmanuel."  The chorus first appeared in a collection of 11 choruses entitled <u>Choruses From The King's Temple, 1976 Book I</u> and was used by the church in their worship services.  In 1983, C.A. Music, Inc. acquired the copyright in "Emmanuel" and licensed the song to dozens of companies.  To ensure proper title to the copyright in "Emmanuel," C.A. Music acquired several affidavits from eye witnesses who testified that they watched McGee independently create the song.  R3-69-3.  Since then, "Emanuel" has appeared in a number of Christian denomination hymnals, and has been translated into dozens of foreign languages.  For much of the 1980s and

---

[5] The King's Temple Church is now the New Beginnings Church.

1990s, it was ranked in the top 20 requested songs rated by Christian Copyright Licensing, Inc., a copyright clearinghouse company that monitors and reports licensing transactions for Christian music.

From 1989 until 1998, Calhoun was a part-time organist at a United Methodist Church. As an organist, he played for choir rehearsals three times a week and played from hymnals which included "Emmanuel." He admits to using these hymnals, but Calhoun contends that he did not discover "Emmanuel" until 1997.

On 19 July 1999, Calhoun filed a pro se complaint for copyright infringement in the Southern District of Georgia against various publishing houses and record labels. Calhoun alleged that the chorus "Emmanuel" was based on the chorus section of "Before His Eyes," and that McGee/Assigns published, marketed, promoted, and distributed the alleged infringing work without Calhoun's permission. Calhoun filed a second complaint on 30 March 2000 against various publishing houses, churches and Christian book stores. The district court consolidated both actions, noting that the claims were identical.

McGee/Assigns moved for summary judgment arguing that McGee independently created and had no reasonable access to "Before His Eyes" when he created "Emmanuel." They further argued that "Emmanuel" was not substantially

6

similar to "Before His Eyes" because the lyrics, cord progressions, and keys of the two compositions were different. Additionally, McGee/Assigns asserted that McGee's action was barred by the three-year statute of limitations and the equitable doctrine of laches, due to his long delay in filing suit.

Calhoun responded by asserting that McGee had access to "Before His Eyes" because it was promoted at concerts, churches, television, and radio stations. Further, he contended that the two works were strikingly similar and that the delay and laches arguments were without merit because he first discovered the alleged infringement in 1997, within the three-year statute of limitations for filing this action.

The district court granted McGee/Assigns' motion for summary judgment finding that there was insufficient evidence to show both access and striking similarity. The district court did not alternatively consider McGee/Assigns' statute of limitations, delay, and laches arguments. Calhoun filed a timely appeal of the judgment.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo, apply the same standard as the district court, and review all facts and reasonable inferences in light most favorable to the nonmoving party. Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999). Summary judgment is proper when "there

is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).

Two elements must be proven in order to establish a prima facie claim for copyright infringement: (1) that Calhoun owns a valid copyright in "Before His Eyes," and (2) that McGee copied "constituent elements of the copyrighted work that are original."  Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).  To establish copying, Calhoun must show that McGee had access to "Before His Eyes," and that "Emmanuel" is so substantially similar to "Before His Eyes" that "an average lay observer would recognize the alleged copy as having been appropriated from the original work."[6]  Original Appalachian Artworks, Inc. v. Toy Loft, 684 F.2d 821, 829 (11the Cir. 1982) (citation omitted).  "Proof of access and substantial similarity raises only a presumption of copying which may be rebutted by [McGee/Assigns] with evidence of independent creation."[7]  Id.

---

[6] Where a plaintiff cannot demonstrate access he may, nonetheless, establish copying by demonstrating that his original work and the putative infringing work are strikingly similar.  See  Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1249 (11th Cir. 1999); Benson v. Coca Cola Co., 795 F.2d 973, 975 n.2 (11th Cir. 1986) (en banc); Ferguson v. National Broadcasting Co., 584 F.2d 111, 113 (5th Cir. 1978).

[7] Music is often the milieu in which the copyright concepts of "strikingly similar" and "independent creation" have been involved.  See Selle v. Gibb, 741 F.2d 896 (7th Cir. 1984) (plaintiff failed to show that musical group Bee Gees had access to plaintiff's song "Let It End" before they composed "How Deep Is Your

While McGee/Assigns assert that the two simple melodies are not substantially similar, much less strikingly similar, even a casual comparison of the two compositions compels the conclusion that the two compositions are practically identical. Given the limited number of musical notes (as opposed to words in a language), the combination of those notes and their phrasing, it is not surprising that a simple composition of a short length might well be susceptible to original creation by more than one composer.[8] However, in the realm of copyright, identical expression does not necessarily constitute infringement.[9] Just as two

Love"); Benson, 795 F.2d at 975 (song "I'd Like to Buy the World a Coke" was an independent creation and did not infringe copyright of song "Don't Cha Know"); Repp & K& R Music, Inc. v. Webber, 132 F.3d 822 (2nd Cir. 1997) (song "Till You" did not infringe copyright for song "Close Every Door"); Tisi v. Patrick, 97 F. Supp 2d 539 (S.D.N.Y. 2000) (composer failed to show (1) that performer had access to "Sell Your Soul" and (2) the necessary "striking similarity" between "Sell Your Soul" and "Take a Picture").

[8] This is particularly true in certain genres of music where familiar phrasing is present. Here the genre is church music. We are only dealing with a basic melody – not lyrics or harmonic background or accompaniment – here, only a short melody is at issue.

[9] We have cautioned trial courts in this circuit "not to be swayed by the fact that two works embody similar or even identical ideas." Toy Loft, 684 F.2d at 829 n. 11. See also MiTek Holdings, Inc. v. Arce Engineering Company, Inc., 89 F.3d 1548 (11th Cir. 1996) (competitor's copying of protectable elements of copyrighted computer programs was *de minimis* and not actionable); Bateman v. Mnemonics, Inc., 79 F.3d 1532 (11th Cir. 1996).

9

paintings of the same subject in nature may appear identical, the two paintings'

origins may be of independent creation.[10]

McGee can fully negate any claim of infringement if he can prove that he

independently created "Emmanuel." Benson v. Coca Cola Co., 795 F.2d 973, 975

(11th Cir. 1986) (en banc) ("testimony [of writers of allegedly infringing song]

constitutes uncontradicted evidence of independent creation, fully negating any

claim of infringement"). Once McGee offers evidence of independent creation,

Calhoun has the burden of proving that McGee in fact copied "Before His Eyes."

Miller v. Universal City Studios, Inc., 650 F.2d 1365, 1375 (5th Cir. 1981).

As the district court points out, McGee stated in his affidavit that he

"independently created 'Emmanuel' during [a] church service in May or June

---

[10]Franklin Mint Corp. v. National Wildlife Art Exchange, Inc., 575 F.2d 62 (3rd Cir. 1978) (while ideas in the two paintings of cardinals involved were similar, the expressions were not, and thus, no copyright infringement); See also Leigh v. Warner Bros., 212 F.3d 1210, 1214 (11th Cir. 2000) (photographs of the same sculpture portraying the figure in the same pose, alone, did not give rise to infringement); Concrete Machinery Co., Inc. v. Classic Lawn Ornaments, Inc., 843 F.2d 600 (1st Cir. 1988); Selle, 741 F.2d at 896 (stating that "two works may be identical in every detail, but, if the alleged infringer created the accused work independently or both works were copied from a common source in the public domain, then there is no infringement"); Herbert Rosenthal Jewerly Corp. v. Kalpakian, 446 F.2d 738 (9th Cir. 1971) (copying of expression was not barred where "idea" of a jeweled bee pin and the "expression" of the "idea" were inseparable); 3 Nimmer, § 13.03[B][2][b] ("if the only original aspect of a work lies in its literal expression, then only a very close similarity, verging on the identical, will suffice to constitute an infringing copy.").

1976. [He] did not use any pre-existing material as a basis for the song. [He] did not use any sheet music, lead sheets or hymnals." R3-116-21. Moreover, McGee provided affidavits of several witnesses who corroborate his independent creation of "Emmanuel" during a church service. R3-69-2. Calhoun did not offer any evidence to contradict McGee's testimony. Therefore, the district court was correct in concluding that "McGee's testimony constitutes uncontradicted evidence of independent creation, which fully negates any claim of infringement." R3-116-22.

Furthermore, the district court found that "Emmanuel" was independently created by McGee because he had no access or reasonable opportunity[11] to view "Before His Eyes." Calhoun provides three theories to attempt to establish McGee had access to view "Before His Eyes." First, Calhoun alleges that he taught students from the state of Washington while he was an instructor at the Stamps-Blackwood School of Gospel Music in Kentucky, and that these students procured and made his music available to McGee. R3-116-6. Calhoun provided seven names and addresses of students from the state of Washington that he taught in the

_____

[11] Since evidence of actual viewing or knowledge of the copyrighted work is virtually impossible to prove, we regard access as a "reasonable opportunity to view" the copyrighted work. Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1249 (11th Cir. 1999).

11

summers from 1972 to 1976. The district court noted that Calhoun did not indicate whether these seven students resided in Washington during the time period of 1972 to 1976, when he allegedly taught them. Furthermore, Calhoun did not offer any affidavits of these seven individuals to corroborate his allegations that they provided his music to McGee or anyone associated with the King's Temple Church. Nor did Calhoun proffer any evidence to rebut McGee's affidavits or declarations stating that he created "Emmanuel" without any sheet music or lead sheets. McGee wrote "Emmanuel" during a church service at the King's Temple Church in Seattle, Washington in the presence of eye witnesses who corroborate McGee's independent creation of the song. R3-69-2, ¶ 2.

Calhoun also argues that McGee heard "Before His Eyes" on the radio, television, or at a performance. He performed "Before His Eyes" on television three times. However, Calhoun offered no admissible evidence to show that these performances were aired outside of Atlanta and Portsmouth, Virginia.[12] The only evidence offered by Calhoun was a letter from the producer of *The 700 Club*, where Calhoun performed "Before His Eyes" on 6 October 1972. The letter explained that the *The 700 Club* was broadcast throughout the South, but, most

---

[12] Calhoun stated in a deposition that he did not know what television station were affiliates of the CBN network during the time of his performances.

notably, the letter did not indicate that the show was available in any part of the Pacific Northwest region of the country.

In addition, Calhoun contended that "Before His Eyes" was performed and promoted at concerts, in churches, to record labels, and over the radio, specifically over The Grand Ole Opry Gospel Radio, which was syndicated from Nashville, Tennessee. The only evidence that his song was accessible in the state of Washington was a letter that Calhoun provided from the Operations manager of WSM, the radio station that broadcasts The Grand Ole Opry Gospel Radio, that stated "[r]eception of WSM in Washington state, therefore, while possible from time to time, is not likely to have occurred in the 1970s on anything resembling a consistent basis." R3-116-8. Furthermore, Calhoun provided no evidence to refute McGee's testimony that he had "never seen nor heard the television program 'Warner Robbins Presents,' . . . never seen the television program 'The 700 Club,'" nor had he "heard the radio program 'The Grand Ole' Opry Gospel Hour.'" Id. at 8-9

As the district court points out, the evidence does not support Calhoun's claim that "Before His Eyes" received widespread publicity. Calhoun has only received $11 in performing rights and publishing royalties for "Before His Eyes."

Furthermore, Calhoun has no records of any royalties received from the sale of his album "It's Through Our Faith," on which "Before His Eyes" appears.

Finally, Calhoun asserted that McGee had access to his work because he sent "Before His Eyes" to Faith Music Company, which Lillenas Publishing Company purchased around 1975. Calhoun argued that McGee had dealings with Lillenas, and that Lillenas' alleged possession of his song is sufficient to establish access. The district court found and the record supports that there was no connection between McGee and Lillenas. Calhoun did not offer any evidence to rebut McGee's statement that he "never had any relationship with any music publishers" prior to 1976. R3-116-13. Therefore, Calhoun cannot prove access based on this theory either. Thus, citing no evidentiary basis for access and acknowledging a strong and unrefuted evidentiary basis for McGee's claim of independent creation, the district court did not err in entering judgment against Calhoun.

### III. CONCLUSION

These consolidated cases involve the appeal of a grant of summary judgment in which the district court held that there was insufficient evidence to show that "Emmanuel" was strikingly similar to "Before His Eyes," and therefore, Calhoun had no claim for copyright infringement. We conclude that there is no genuine issue of material fact about McGee independently creating "Emmanuel." Therefore, we AFFIRM the judgment of the district court, and conclude that

14

Calhoun's claims of copyright infringement should be barred by McGee's <u>bona</u> <u>fide</u> claim of independent creation.

BIRCH, Circuit Judge, specially concurring:

I concur. Moreover, because the confluence of facts in this case present a "perfect storm," I think it enticing, if not necessary, to address an alternative basis upon which the district court's judgment could be sustained - - - unreasonable delay. Whether unreasonable delay may bar a claim of copyright infringement[1] where there is considerable delay in filing suit and a bona fide claim of independent creation exists is globally one of first impression and merits examination. I am persuaded that just as equitable tolling[2] may save an otherwise tardy infringement action, unreasonable delay should bar such an action where a bona fide independent creation claim is presented.[3]

---

[1]Heretofore, courts have frequently considered delay in initiating an action where, as is typical, preliminary injunctive relief has been requested. Essentially, where unreasonable delay has occurred, courts have concluded that such delay is suggestive of a lack of irreparable harm. See, e.g., Richard Feiner and Co., Inc. v. Turner Entertainment Co., MGM/UA, 98 F.3d 33 (2nd Cir. 1996); Tom Doherty Associates, Inc. v. Saban Entertainment 60 F.3d 27 (2d Cir. 1995); Forry, Inc. v. Neundorfer, Inc., 837 F.2d 259 (6th Cir. 1988); Markowitz Jewerly Co., Inc. v. Chapal/Zenray, Inc., 988 F. Supp. 404 (S.D.N.Y. 1997); Fritz v. Arthur D. Little, Inc., 944 F.Supp. 95, 98 (D.Mass.1996).

[2] See Stone v. Williams, 970 F.2d 1043 (2d Cir. 1992); Taylor v. Meirick, 712 F.2d 112 (7th Cir. 1983); Prather v. Neva Paperbacks, Inc., 446 F.2d 338 (5th Cir. 1971); 3 Nimmer § 12.05[B].

[3] I stress that here I am not applying a laches analysis to an infringement action. Rather I analyze this unique case as essentially a declaratory judgment action, focusing on a musical composition that the first composer in time claims to be identical to the second composer's score when a bona fide claim of independent creation is asserted. The cases, heretofore existing,

16

I conclude that the challenging author must not unreasonably delay in his assertion of copyright as to the other author's work where he seeks to have a judicial determination of the challenged author's originality of creation.[4] Failing to do so would constitute a manifest injustice and potentially unjust denial of the challenged author's constitutionally guaranteed copyright in his original (albeit later) work. The gravamen of Calhoun's lawsuit is that he claims ownership in "Emmanuel" because he contends the melodies are practically identical. I

---

closest to this unusual case involve claims of putative co-authorship where one of the co-authors seeks a declaration of sole ownership. Thus my approach is closest to that taken by the Second Circuit in Merchant v. Levy, 92 F.3d 51, 57 n.8 (2d Cir. 1996) (a co-authorship case where laches was not addressed, but a delay bar was imposed). Moreover, this avoids the need to embrace one side or the other in applying the laches defense.

The circuits are split on whether it is appropriate to consider a laches defense where an infringement action is brought within the statutory three-year period of limitations. See Stone v. Williams, 970 F.2d 1043, 1048 (2d Cir. 1992) (where uncertainty surrounded the relative's status of the author's family, the statue of limitations was not applied to defeat the copyright co-ownership claim of an author's relative accruing more than three years before the lawsuit); Lyons Partnership v. Morris Costumes, Inc., 243 F.3d 789, 797 (4th Cir. 2001) ("in connection with copyright claims, separation of powers principles dictate that an equitable timeliness rule adopted by courts cannot bar claims that are brought within the legislatively prescribed statute of limitations"); Danjaq LLC v. Sony Corporation, 263 F.3d 942, 954 (9th Cir. 2001) ("If a defendant can show harm from the delay, the court may, in extraordinary circumstances, defeat the claim based on laches, though the claim is within the analogous limitations period")(citation omitted). Perhaps the Court's opinion in Nat'l Railroad Passenger Corp. v. Morgan, 122 S. Ct. 2061, 2077, __ U.S. __ (2002) will clarify that issue.

[4] A work is "original," and therefore accorded copyright protection, if it is independently created by the author and possesses some minimal degree of creativity. 17 U.S.C. § 101 et seq.

17

conclude that this claim and all those logically following therefrom should be barred, including any infringement claims. Such an approach is not without precedent or logic.[5]

## 1. *Period of Delay*

The statute of limitations for copyright infringement claims is triggered by violations, that is, actual infringements. The limitations period may be triggered when a plaintiff knows or, in the exercise of reasonable diligence, should have known about an infringement. 17 U.S.C. § 507(b). One should look to the appropriate statute of limitations as a guide to determine whether the delay was reasonable. Kason Indus., Inc., 120 F.3d at 1203. The Copyright Act sets forth a three-year statute of limitations for claims of copyright infringement. 17 U.S.C. §

---

[5] See, e.g., Merchant, 92 F.3d at 56 ("[w]e hold that plaintiffs claiming to be co-authors are time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and remedies that would flow from such a declaration."); Danjaq LLC, 263 F.3d at 954 (upholding a district court's application of laches to prevent a plaintiff from pursuing copyright infringement claims when plaintiff filed suit "at least twenty-one years--and more likely, thirty-six years" after having knowledge of the potential claims); Margo v. Weiss, 213 F.3d 55, 60-61 (2nd Cir. 2000); Zuill v. Shanahan, 80 F.3d 1366, 1371 (9th Cir. 1996) (barring "a declaratory judgment of co-ownership and the relief ancillary to such a claim"); New Era Publications Int'l v. Henry Holt & Co., 873 F.2d 576, 584-85 (2d Cir.1989) (laches barred plaintiff from enjoining publication of author's biography when plaintiff had delayed "unreasonabl[y] and inexcusabl[y]" in filing suit.); Fort Knox Music, Inc. v. Baptiste, 47 F. Supp 2d 481, 483-84 (S.D.N.Y. 1999); 3 Nimmer § 12.05 [C], n.63 ("If *A* cannot be heard to claim belatedly that he co-authored a work with *B* 20 years ago, which would result in *A* owning 50% of the copyright, then all the more so *C* must be barred from belatedly claiming that she solely authored a work on which *D* has been claiming authorship credit for 20 years, which would result in *C* owning 100% of the copyright").

507(b). Accordingly, one basis for determining whether Calhoun's delay in filing suit was reasonable is the three-year statute of limitations in § 507(b).

Calhoun's period of delay ranges anywhere from 23 years, from the time that "Emmanuel" was written in 1976, to 13 years, from the time it was licensed to churches around the world in 1984. During this time Calhoun took no legal action to stop or to seek redress for the putative infringement. By any calculation, this delay is more than enough. See Freedom Savings and Loan Ass'n. v. Way, 757 F.2d 1176, 1186 fn. 8 (11th Cir. 1986) (five years delay in filing trademark infringement suit considered sufficient); Studiengesellschaft Kohle mbH v. Eastman Kodak Co., 616 F.2d 1315, 1326 (5th Cir. 1980) (delay presumed unreasonable when exceeded the statutory six-year period). Applying the three-year benchmark, it is clear that Calhoun's delay of over a decade plainly constitutes a significant delay.

2.      *Inexcusable Delay*

Next, the cause of the delay should be examined to determine whether Calhoun's lengthy delay in filing suit was excusable. Kason, 120 F.3d at 1204. Some examples of permissible delay, frequently viewed in the context of equitable tolling, among other circuits include: (1) the need for the exhaustion of remedies through the administrative process, Couveau v. American Airlines, Inc., 218 F.3d

19

1078, 1083-84 (9th Cir. 2000); (2) additional time to determine whether the scope of the proposed infringement will justify the cost of litigation, ," Lotus Dev. Corp. v. Borland Int'l, Inc., 831 F.Supp. 202, 219 (D.Mass.1993), rev'd on other grounds, 49 F.3d 807 (1st Cir.1995); and (3) the need for additional time to evaluate the extent of the infringement, A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1033 (Fed. Cir. 1992).

To explain his delay in filing suit, Calhoun claims that he was unaware that "Emmanuel" existed. McGee/Asignees contend that the delay was inexcusable because Calhoun should have known about his alleged claim of infringement well before 1997, the date he claims to have "discovered" the putatively infringing and strikingly similar composition, due to the popularity of "Emmanuel" throughout the past two decades. "Emmanuel" has appeared in a number of major Christian denominational hymnals and has been translated into dozens of foreign languages. It has consistently been ranked in the top twenty requested Christian songs. Calhoun worked as both a choir director and an organist for almost ten years prior to filing suit, and regularly played songs from hymnals that contained the chorus "Emmanuel." Furthermore, Calhoun, himself, listed over 21 publications that included "Emmanuel" in addition to the list of 20 publications submitted by McGee/Assignees during discovery. R1-43; R2-47, 48.

The district court found "it difficult to believe that [Calhoun] did not have notice of the allegedly infringing song prior to 1997. . . . [H]ad [Calhoun] exercised an iota of diligence, he would have learned of the possible infringement earlier." R3-108 at 8. I agree. Given the evidence in this record no reasonable juror could have concluded that Calhoun exercised any diligence in protecting his copyright. With copyright rights come concomitant responsibilities, including the responsibility to assert those rights in a timely manner after exercise of diligence. Moreover, in the district court Calhoun argued that the two compositions were strikingly similar in melody (as opposed to lyrics), thus compelling a recognition of the putative infringement. Given the length of time that had passed, the wide dissemination of "Emmanuel," and his substantial experience and involvement with church music, Calhoun should have known about "Emmanuel," and therefore, the delay in filing suit was inexcusable.

**3.** *Prejudice*

The final factor informing the decision to bar by unreasonable delay is whether McGee/Assigns have been prejudiced by Calhoun's delay. In similar contexts courts have recognized a variety of factors that constitute prejudice: (1) important witnesses have died; (2) the memories of witnesses have been dulled; (3) relevant records have been destroyed or are missing; and (4) the loss of monetary

21

investments which likely would have been prevented by earlier suit.  Eastman

Kodak Co., 616 F.2d at 1326.  See Jackson v. Axton, 25 F.3d 884 (9th Cir. 1994);

Byron v. Chevrolet Motor Div. of General Motors Corp. 1995 WL 465130

(S.D.N.Y. 1995).  Cf. Hoste v. Radio Corporation of America, 654 F.2d 11 (6th

Cir. 1981).  Calhoun admits that the song "Emmanuel" may not have become as

widespread as it is today had he objected sooner.  As McGee/Assigns point out,

since 1984, C.A. Music has licensed "Emmanuel" to hundreds of licensees, 28 of

whom make up the assigns in this case.  McGee's assigns have invested a

substantial amount of time and money in the licensing of "Emmanuel" by relying

on the validity of its copyright.  Accordingly, McGee/Assigns are able to

demonstrate prejudice by showing that they suffered consequences that they would

not have, had Calhoun acted promptly.

While the foregoing analysis is not required for a resolution of this dispute,

perhaps my rumination may be useful to those confronted with this intriguing

copyright scenario in the future.