80 F.3d 1366
 64 USLW 2648, 1995 Copr.L.Dec. P 27,506,
38 U.S.P.Q.2d 1430,
96 Cal. Daily Op. Serv. 2462,
96 Daily Journal D.A.R. 4110
 Paul ZUILL; Lou Rossi, Plaintiffs-Appellants,
v.
John SHANAHAN, an Individual; John Herlihy, an Individual;
Gateway Educational Products, Ltd., a California
Corporation, et al.; HMS Publishing Co., Ltd., a Business
Entity of Unknown Form; Shanahan Publishing Company, a
Business Entity of Unknown Form; Hooked On Phonics, a
California Corporation; Hooked On Math, a California
Corporation; The Reading Revolution, a California
Corporation, Defendants-Appellees.
 No. 93-56217.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 7, 1995.
Decided April 10, 1996.
As Amended June 14, 1996.
 
 Michael Q. Eagan, Law Offices of Michael Q. Eagan, San Francisco, California, for defendant-appellee Shanahan.
 Scott R. Miller, Riordan & McKinzie, Gina M. Calvelli, Los Angeles, California, for defendants-appellees Herlihy et al.
 Cameron M. Jolly and G. David Tenenbaum (on the briefs), David A. Weinfeld (argued), Weinfeld & Mixon, Costa Mesa, California, for plaintiffs-appellants.
 Appeal from the United States District Court for the Central District of California, Gary L. Taylor, District Judge, Presiding. No. CV-91-00561-GLT.
 Before SCHROEDER and KLEINFELD, Circuit Judges, and KING, District Judge.*
 KLEINFELD, Circuit Judge:
 
 
 1
 This case turns on construction of the copyright statute of limitations, 17 U.S.C. § 507(b), as applied to claims of co-ownership. There is also an issue of costs.
 
 FACTS
 
 2
 Mr. Shanahan came up with the idea which eventually became "Hooked on Phonics." This is a program, which includes audio tapes and flash cards, to assist children in learning how to read. Mr. Shanahan created what became Hooked on Phonics by setting vowel and consonant sounds to Three Blind Mice on audiotapes, to help his son learn how to read. Later, Mr. Shanahan brought in an arranger and piano teacher, Mr. Zuill, and a percussionist, Mr. Rossi, to improve the music. Music was used to make the drill and practice more enjoyable for the children who would use the tapes.
 
 
 3
 There was some ambiguity about who was to be paid how much. Eventually, in January of 1987, Mr. Shanahan presented Mr. Zuill and Mr. Rossi with a written agreement saying that each of them would get two and one half percent of "profits from the sale of Hooked on Phonics." The agreement also recited that Mr. Shanahan's company, HMS Publishing Company, Ltd., was the "sole owner and copyright holder of 'Hooked on Phonics.' " Mr. Zuill and Mr. Rossi thought that the two and a half percent should be applied to gross sales, not profits, and they refused to sign the agreement. Mr. Shanahan responded, according to Mr. Rossi, by saying "that's all I can give you. Take it or leave it." None of the parties recalled arguing about Shanahan's claim to be the sole owner of the copyright, when the compensation arrangement was proposed in 1987.
 
 
 4
 Though Mr. Shanahan disputes some of the facts as set out below, for purposes of summary judgment, we present the evidence in the light most favorable to the opponents of the motion, Mr. Zuill and Mr. Rossi. United States ex rel. Anderson v. Northern Telecom, Inc., 52 F.3d 810, 815 (9th Cir.1995). We assume for purposes of this decision that the music had sufficient originality to be copyrighted, and that the same music was used on the tapes from 1987 to 1991. We further assume, for purposes of this decision, that Mr. Zuill and Mr. Rossi provided sufficient creative input so that there would be a genuine issue of fact as to whether their work could have been copyrighted. These factual questions need not be decided in order to resolve the case. What is critical to this case and is not disputed, is that any claims to ownership by Mr. Zuill and Mr. Rossi were expressly repudiated by Mr. Shanahan and his company in 1987. Mr. Shanahan had also claimed to be the "sole owner" in an earlier proposed financial agreement.
 
 
 5
 Mr. Shanahan and the corporations he used to market Hooked on Phonics and its predecessors expressly and repeatedly claimed sole ownership of the copyright in 1986 and 1987. They did so by saying so expressly in writing, and by furnishing copies of the Symphonics product in August 1986 with a printed copyright notice. The compensation agreement tendered in January of 1987 claimed sole ownership of the copyright. In the Spring of 1987, Mr. Zuill received a copy of Hooked on Phonics, stating in writing that HMS Publishing Company owned the copyright, and he learned at that time that Mr. Shanahan's company was marketing the product.
 
 
 6
 Mr. Shanahan was unsuccessful, for quite some time, in his marketing. He first called it Symphonics, then McPhonics when he was trying to sell it through McDonald's, finally Hooked on Phonics. The product was gradually improved and expanded, and eventually caught on. During the first few years, no profits were made, and Mr. Shanahan advised Mr. Zuill and Mr. Rossi of that.
 
 
 7
 Then in the 1990s, Mr. Shanahan, through the corporation he used to sell Hooked on Phonics, started making money from it. Mr. Zuill and Mr. Rossi sued him in October of 1991, claiming to be co-owners of one-third interests in Hooked on Phonics. They sought a declaratory judgment of co-ownership, an injunction, an accounting for their claimed share, and other relief.
 
 
 8
 The district court granted summary judgment against Mr. Zuill and Mr. Rossi on the copyright claims, holding that they were barred by the statute of limitations. The court declined to exercise supplemental jurisdiction over the state claims, breach of contract and others, and dismissed them without prejudice so that they could be adjudicated in state court.
 
 ANALYSIS
 
 9
 The district court found the action barred by the copyright statute of limitations, 17 U.S.C. § 507(b), and granted summary judgment to the defendants. We review the district court's grant of summary judgment de novo. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994).
 
 
 10
 1. Statute of Limitations.
 
 
 11
 Mr. Zuill and Mr. Rossi claim to be "authors of a joint work," so that copyright vested in them as well as Mr. Shanahan as "co-owners." 17 U.S.C. § 201(a). It is possible, under the evidence developed at the time of summary judgment, that the work of Mr. Zuill and Mr. Rossi could have been "for hire," so that Mr. Shanahan was the author for purposes of copyright, 17 U.S.C. § 201(b). Mr. Zuill and Mr. Rossi did not claim that Mr. Shanahan was not an owner, just that they were co-owners. Mr. Shanahan's successful defense in district court was that the co-ownership claim was barred by the statute of limitations.
 
 
 12
 This copyright action pursuant to Title 17 of the United States Code was governed by a three year statute of limitations:
 
 
 13
 (b) Civil Actions. No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued.
 
 
 14
 17 U.S.C. § 507(b). Mr. Shanahan's theory, which prevailed below, is that if Mr. Zuill and Mr. Rossi had a claim to be co-owners, it accrued no later than early 1987, so the 1991 law suit was barred. Mr. Zuill's and Mr. Rossi's theory is that so long as their music was used in Hooked on Phonics, a new claim arose every time the product was sold, and their 1991 law suit was not barred for sales during the three years from 1988 to 1991. We conclude that claims of co-ownership, as distinct from claims of infringement, accrue when plain and express repudiation of co-ownership is communicated to the claimant, and are barred three years from the time of repudiation.
 
 
 15
 The putative co-owners, Mr. Zuill and Mr. Rossi, argue that the statute of limitations cuts off the remedy, but not the right. By that, they mean their right to co-ownership lasts as long as the copyright can--lives of the creators plus fifty years, 17 U.S.C. § 302(b)--and only their remedy for stale infringements would be barred. This argument fails because they have not sued for infringement and could not. They claim to be co-owners with defendants. "A co-owner of a copyright cannot be liable to another co-owner for infringement of the copyright." Oddo v. Ries, 743 F.2d 630, 632-33 (9th Cir.1984). Because a co-owner is an owner, he has a right to use or license the use of the copyright, and cannot be an infringer: his duty to account to other co-owners for profits arises from equitable doctrines relating unjust enrichment and general principles of co-ownership, and does not amount to an infringement claim. Id. at 633. An infringement claim can be brought only against one who violates "the exclusive rights of the copyright owner," see 17 U.S.C. § 501(a), (b), and an owner does not have rights exclusive of a co-owner's, so an infringement claim cannot lie against a co-owner.
 
 
 16
 Because they have no infringement claim, we cannot identify an asserted right of plaintiffs which can withstand the statute of limitations. The remedy they seek is a declaration that they are co-owners, and none of the subsidiary remedies, for an accounting and so forth, are independent of that remedy.
 
 
 17
 Plaintiffs cite legislative history, which says that the intention of Congress was that the statute of limitations would extend to remedies and not substantive rights.[1] The legislative history does not speak to the issue in the case. Plaintiffs were not attempting to enforce their right collaterally in the manner described in the legislative history, or to assert any sort of equitable tolling, or otherwise to claim a remedy not barred. A claim for declaratory relief is subject to a statute of limitations generally applicable to civil claims, see Levald v. City of Palm Desert, 998 F.2d 680, 688 (9th Cir.1993).
 
 
 18
 There is a surprising lack of precedent on the question of when a cause of action claiming co-ownership of a copyright accrues. Plaintiffs rely on a Second Circuit case, which held that the statute of limitations did not bar a claim of ownership. See Stone v. Williams, 970 F.2d 1043 (2d Cir.1992). It may be that Stone is distinguishable because of its "highly idiosyncratic facts," see 1 M. Nimmer & D. Nimmer, Nimmer on Copyright, § 12.05 n.2.2 (1992), such as that Hank Williams's daughter's claim to be an owner had to await judicial determination in that she was in fact Hank Williams' daughter and heir. Her ownership claim was based on being an heir rather than being a joint creator. See Stone v. Gulf American Fire & Casualty Co., 554 So.2d 346 (Ala.1989). Because it is not controlling authority in this circuit, we need not decide whether Stone is properly distinguishable.
 
 
 19
 We have accepted the proposition, applied in Stone, that "the statute bars recovery on any claim for damages that accrued more than three years before commencement of suit," neither barring infringing acts within the limitations period, nor reaching back to infringements prior to the statutory period. Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir.1994); cf. Jackson v. Axton, 25 F.3d 884, 887 n. 2 (9th Cir.1994). That proposition has no application to a co-ownership claim, as opposed to an infringement claim. Although "laches may be a defense to an action seeking a declaration of co-authorship," the defense here, statute of limitations, is legal rather than equitable, so it "may give defendants repose" and is not "premised on a showing of prejudice." Jackson, 25 F.3d at 887-88.
 
 
 20
 Plaintiffs argue that this construction of the statute which we adopt creates something like adverse possession to copyright ownership. We accept that there is some similarity between co-ownership of a copyright, and tenancy in common in real property. See, e.g., Stone, 970 F.2d at 1048 (claim accrued at time that "a reasonably diligent person ... would have been put on inquiry as to existence of a right ..."). An express or implicit ouster of a cotenant by an unequivocal act of ownership starts the adverse possession statute of limitations running. 4 Tiffany, The Law of Real Property § 1185 (3rd ed.1975); 20 Am.Jur.2d, Cotenancy and Joint Ownership, § 115, at 205-06 (1995) ("Where a cotenant has been ousted by his cotenant, the statute of limitations commences to run from the date of the ouster"). We see nothing wrong with this resemblance. Copyright, like real estate, lasts a long time, so stability of title has great economic importance. The Supreme Court has reminded us that "Congress' paramount goal in revising the 1976 Act [was] enhancing predictability and certainty of copyright ownership." Community for Creative Non-Violence v. Reid, 490 U.S. 730, 749, 109 S.Ct. 2166, 2177, 104 L.Ed.2d 811 (1989). "Because copyright ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the boundaries of copyright law be demarcated as clearly as possible." Fogerty v. Fantasy, Inc., --- U.S. ----, ----, 114 S.Ct. 1023, 1030, 127 L.Ed.2d 455 (1994).
 
 
 21
 Plaintiffs further argue the desirability of allowing putative co-owners to wait to see whether there is pecuniary value to a law suit, before cluttering the courts. But the court's administrative gain if lawsuits can be postponed this way is offset by the burden and deterrent to development and marketing by a co-owner. It is inequitable to allow the putative co-owner to lie in the weeds for years after his claim has been repudiated, while large amounts of money are spent developing a market for the copyrighted material, and then pounce on the prize after it has been brought in by another's effort. "Delay under such circumstances allows the [putative] owner to speculate without risk with the other's money." Haas v. Leo Feist, Inc., 234 F. 105, 108 (S.D.N.Y.1916) (Learned Hand, J.).
 
 
 22
 A claim for a declaratory judgment of co-ownership and the relief ancillary to such a claim is a civil action, and "[n]o civil action shall be maintained ... unless it is commenced within three years after the claim accrued." See 17 U.S.C. § 507(b). Mr. Shanahan's plain and express repudiation in 1986 and 1987 of any claim to co-ownership caused Mr. Zuill's and Mr. Rossi's action, if any, to accrue, so the district court properly found the action to be barred by the statute of limitations. An infringement occurs every time the copyrighted work is published, but creation does not. Creation, rather than infringement, was the gravamen of plaintiffs' co-ownership claim, so the claim did not accrue upon subsequent publication.
 
 
 23
 2. Costs.
 
 
 24
 The district judge, in the exercise of his discretion, did not award attorneys' fees to either side. "[A]ttorneys' fees are to be awarded to prevailing parties only as a matter of the court's discretion," not automatically. Fogerty, --- U.S. at ----, 114 S.Ct. at 1033. The court awarded costs in favor of defendants.
 
 
 25
 Two aspects of the costs award are challenged.[2] First, the court awarded $3,661 which defendants paid to another law firm to get certified copies to prove copyright registration. The district court treated this as falling within the 28 U.S.C. § 1920(4) category of "fees for exemplification and copies of papers necessarily obtained for use in the case." Fees for exemplification and copying "are permitted only for the physical preparation and duplication of documents, not the intellectual effort involved in their production." Romero v. City of Pomona, 883 F.2d 1418, 1428 (9th Cir.1989). Crawford Fitting Company v. J.T. Gibbons, Inc., 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987) "strictly limits reimbursable costs to those enumerated in section 1920," and "a district court may not rely on its 'equity power' to tax costs beyond those expressly authorized by section 1920." Romero, 883 F.2d at 1428.
 
 
 26
 Of these expenses, $2,114 were Copyright Office fees and expenses of photocopying the documents and shipping them to defense counsel. The remaining $1,547 was for attorneys' fees and related "intellectual effort involved in their production." Romero compels the conclusion that the $1,547 could be awarded, if at all, only as attorneys' fees, and not as exemplification fees awardable as costs under 28 U.S.C. § 1920.
 
 
 27
 Second, the district court awarded $4,752.90 for deposition summaries prepared for defendants' law firm by "Independent Summarizers Association," apparently a firm which summarizes transcripts of depositions for attorneys. This falls within none of the subsections of 28 U.S.C. § 1920, and is a traditional legal service rather than a cost. Whether lawyers summarize their own depositions, or hire others to do it for them, a shifting of that cost must be made, if at all, under Crawford and Romero as attorneys' fees.
 
 CONCLUSION
 
 28
 The district court judgment is AFFIRMED, insofar as the copyright claims of the plaintiffs are dismissed. It is REVERSED, with regard to the costs award. The district court should file an amended judgment deleting the award of the contested costs described above.
 
 
 
 *
 The Honorable Samuel P. King, Senior United States District Judge, for the District of Hawaii, sitting by designation
 
 
 [1]
 "The committee wishes to emphasize that it is the committee's intention that the statute of limitations, contained in this bill, is to extend to the remedy of the person affected thereby, and not to his substantive rights." With regard to this point the House report states:
 It may be well to point out that statutes of limitations take the form of a limitation upon the substantive right or upon the remedy. Under the former, the right of action is extinguished at the end of the period and the courts usually have no jurisdiction with regard to actions that are not instituted within the appropriate period. In addition, the courts generally do not permit the intervention of equitable defenses or estoppel where there is a limitation on the right.
 Under the remedial type of statute, the basic right is not extinguished, but the limitation is applied merely to the remedy. In some instances the right itself can be enforced collaterally, as in the case of a mortgage foreclosure subsequent to the expiration of a statutory limitation period for payment of a debt. Equitable considerations are available to prolong the time for bringing suit in such cases where there exist the disabilities of insanity or infancy, absence of the defendant from the jurisdiction, fraudulent concealment, etc.
 As far as this committee has been able to ascertain, all State statutes of limitation, which now govern the Federal courts in copyright actions, are limitations upon the remedy, and the present bill has been drawn to apply this concept to a uniform Federal period of limitations. The committee has not been unmindful that the 6-year statute of limitations in the Patent Code (35 U.S.C. 286) is a limitation upon the substantive right rather than upon the remedy. However, the relatively longer period limitation provided therein compensates for the difference in concept. Moreover, it was considered that the long-standing fact that both the copyright bar and the courts have become accustomed to a limitation based upon the remedy warranted a continuation of this concept in the present bill.
 S.Rep. 85-1014, p.1963 (1957) (emphasis added).
 
 
 [2]
 The District Judge has notified the panel, pursuant to General Order 10.10, that appellants did not, in the district court, challenge the costs on the ground that they were not allowed by 28 U.S.C. § 1920. They did, however, challenge the portion of the costs award which we vacate under the portions of Local Rule 16. That Local Rule includes limitations on costs like those of 28 U.S.C. § 1920. Appellee did not argue that we should reject the challenge on the ground that it was not raised in district court. The issue is purely legal. We have therefore exercised our discretion to consider the issue of conformity with the costs award to 28 U.S.C. § 1920 on appeal