Jean Bryson TOMAS, Plaintiff,

v.

Lorraine GILLESPIE and Dizlo Music Corporation, Defendants.

No. 00 Civ. 0046(GBD).

United States District Court, S.D. New York.

Jan. 5, 2005.

Peter Herbert, Lankler Siffert & Wohl LLP, New York, NY, for Plaintiff.

Robert L. Greene, Law Office of Robert L. Greene, New York, NY, for Defendants.

## OPINION AND ORDER

DANIELS, District Judge.

Plaintiff Jean Bryson Tomas sues defendants Lorraine Gillespie and Dizlo Music Corporation for declaratory relief, accounting damages, and imposition of a constructive trust based on Tomas' alleged ownership interest in copyrights to works authored by the late jazz musician Dizzy Gillespie ("Gillespie"). Defendants move for summary judgment under Fed. R.Civ.P. 56(c) on the grounds that the action is barred (i) by the three-year statute of limitations for civil actions maintained under the federal Copyright Act, 17 U.S.C. § 507(b), and (ii) by the doctrine of laches. For the reasons set forth below, the motion is granted.

### I.

The following facts, viewed in the light most favorable to Tomas, are relevant to this opinion.

Tomas was born on March 10, 1958 in New York City, out of wedlock, to Connie Bryson. (Statement of Material Facts submitted by Defs. Pursuant to Local Rule 56.1 ("Defs.' Rule 56.1 Statement") ¶ 1) Tomas claims that her biological father was Gillespie. Connie Bryson had been acquainted with Gillespie from 1953 and claims that they began a sexual relationship in 1955, when she turned 18. (Declaration of Constance Bryson ("Bryson Decl.") at 1) Tomas claims that she "always knew" that Gillespie was her father. (Deposition of Jean Bryson Tomas ("Tomas Dep.") at 12)

In November of 1964, Connie Bryson commenced paternity proceedings against Gillespie in New York State Family Court, New York County. (*Id.* ¶ 5) Tomas, who was about six years old at the time, remembered participating in this proceeding. (*Id.* ¶ 6; Tomas Dep. at 26) The Family Court ordered Gillespie to make monthly support payments of $125 for Tomas until she reached the age of majority. (Stipulation of Facts, dated February 2, 2001 ("Stipulation") at 2) Gillespie made these payments for approximately 14 years. (*Id.*) From an early age, Tomas knew that Gillespie was providing support to her after that child support proceeding. (Defs.' Rule 56.1 Statement ¶ 6)

Gillespie died on January 6, 1993 in Englewood, New Jersey. (Am.Compl.¶ 5) His last will and testament was probated in New Jersey Superior Court, Bergen County. (*Id.* ¶ 7) He bequeathed all his property to his widow, Lorraine Gillespie, and made no financial provision for Tomas or Tomas' child. (*Id.*)

Tomas is herself a singer. (Defs.' Rule 56.1 Statement ¶ 7) From at least 1986, she has claimed in connection with her career that she is Gillespie's daughter. (*Id.*; Exs. 5 and 6 to Declaration of Jean Bryson Tomas ("Tomas Decl."); Tomas Dep. at 42) From at least 1988, she has claimed publicly that she is Gillespie's

daughter to at least 25 newspapers and magazines, including the *New York Times, USA Today, New York Post,* and Alyn Shipton, who is the author of a biography of Gillespie titled *Groovin' High.*[1] (Defs.' Rule 56.1 Statement ¶ 7)

In 1992, Tomas sought to retain Raoul Felder, an attorney, to represent her in a potential lawsuit against Gillespie to declare paternity. (*Id.* ¶ 8; Ex. D to Defs.' Reply Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Reply")) In 1993, Telarc Records, a recording company, issued an album of Tomas' performances: the liner notes mentioned that she was Gillespie's daughter. (Defs. Rule 56.1 Statement ¶ 9; Ex. 5 to Tomas Decl.) That same year, Telarc Records issued two albums of Gillespie's last live recordings at the Blue Note jazz club in 1992. (*Id.* ¶ 10) Tomas claims that Gillespie's attorney Elliott Hoffman threatened in 1993 to prevent release by Telarc of other Gillespi recordings as long as Telarc continued to release Tomas' recordings. Those recordings were not released until August 1997 when Tomas' recording agreement with Telarc was not renewed. (Tomas Dep. at 72–75)

On January 4, 2000 Tomas commenced the instant action. She filed an amended complaint on February 9, 2000. In her First Claim for Relief, Tomas seeks a judgment declaring that:

1. She is the natural daughter of Gillespie;

2. She owns a 50 percent beneficial interest in renewal copyrights for which the original copyrights were owned by Gillespie, as provided under 17 U.S.C. § 304(a)(C)(ii);

3. She has the right to exploit commercially the works—during their respective renewal copyright terms—whose original copyrights were owned by Gillespie;

4. As co-owner of the renewal copyrights, she is entitled to an accounting and payment from defendants with respect to her 50 percent pro rata share of all proceeds derived by defendants from the commercial exploitation of the renewal copyrights during their renewal terms.

In addition, she seeks orders

1. Requiring defendants to render future accountings and payments to her with respect to all proceeds from commercial exploitation of the renewal copyrights during their renewal terms;

2. Imposing a constructive trust with respect to 50 percent of all proceeds to defendants from the commercial exploitation of the renewal copyrights during their renewal terms.

In her Second Claim for Relief, Tomas seeks

1. A declaratory judgment that, as the natural child of Gillespie, she possesses a termination interest, as provided under 17 U.S.C. §§ 304(c)(2) and 203(a)(2);

2. A permanent injunction barring defendants from representing to any third party that defendants possess the entirety of the termination interest, and from purporting to terminate grants of rights to third parties executed by Gillespie with respect to

---

1. Tomas denies that she used Gillespie's name to "further her career"; furthermore, as she does with most of defendants' Rule 56.1 Statement, "denies that such allegation represents a material fact in connection with defendants' statute of limitations defense in that it does not reference a date from which the statute of limitations is measured." (Pl.'s Statement of Material Facts as to Which There Exists a Genuine Issue to be Tried Pursuant to Local Rule 56.1 ("Pl.'s Rule 56.1 Statement") at 4)

any musical composition written by Gillespie or any sound recording on which Gillespie's recorded performance appears.

On March 19, 2001, defendants moved for summary judgment on all claims.

## II.

■ This court has subject matter jurisdiction pursuant to 17 U.S.C. § 101, et seq., and 28 U.S.C. § 1331.[2] Summary judgment is appropriate if, after drawing all justifiable inferences in favor of the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Curry v. City of Syracuse*, 316 F.3d 324, 329 (2d Cir.2003).

2. Neither party raises the issue of whether the "domestic relations" exception to federal subject matter jurisdiction divests this court of jurisdiction over this case. As defined by the Supreme Court in *Ankenbrandt v. Richards*, 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), the exception is narrowly limited to "cases involving the issuance of a divorce, alimony, or child custody decree." *Id.* at 704, 112 S.Ct. 2206; *see also Korby v. Erickson*, 550 F.Supp. 136, 138 (S.D.N.Y.1982) (Weinfeld, J.) ("Generally, the exception is based upon a true marital relationship and encompasses the incidental rights that flow therefrom such as support of a spouse or children, custody of children, property interests and probate administration—rights legally enforceable by virtue of the legal status."); *Dunn v. Cometa*, 238 F.3d 38, 41 (1st Cir. 2001).

Since the Supreme Court's limitation of the doctrine in *Ankenbrandt*, the "domestic relations" exception has not been applied to cases involving solely a declaration of paternity. *See Westover ex rel. Gray v. Durant*, 75 F.Supp.2d 31, 34 (N.D.N.Y.1999) ("Paternity has never been included within the scope of the domestic relations exception, perhaps because the exception relates to issues arising within the context of marriage while paternity does not necessarily."); *but see Santoya v.*

## III.

### A. Statute of Limitations

■ Civil actions under the Copyright Act are subject to a three-year statute of limitations, 17 U.S.C. § 507(b), and accrue when a plaintiff knows or has reason to know of the injury upon which the claim is premised. *Merchant v. Levy*, 92 F.3d 51, 56 (2d Cir.1996) (citing *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir.1992)). To trigger the statute of limitations, it is required only that the plaintiff knows of the facts furnishing her with a claim, not that those facts are sufficient to entitle her to relief. *Stone*, 970 F.2d at 1048 (citing *Arneil v. Ramsey*, 550 F.2d 774, 781 (2d Cir.1977)).

■ According to her own declarations and deposition testimony, Tomas has known since childhood that Gillespie was

*Coleman*, No. 01–2262, 2001 WL 877529 (E.D.La. Aug.2, 2001) (denying writ of mandamus for paternity status *and* child support in diversity case).

Moreover, *Ankenbrandt* was a diversity case; it is unsettled whether the "domestic relations" exception applies to cases that raise a federal question. The Second Circuit has stated that the exception "is not based on Article III of the Constitution but is instead an interpretation of the diversity statute." *Williams v. Lambert*, 46 F.3d 1275, 1283 (2d Cir.1995); *see also Elk Grove Sch. Dist. v. Newdow*, 542 U.S. 1, 124 S.Ct. 2301, 2314, 159 L.Ed.2d 98 (2004) (Rehnquist, J., concurring) (noting that the exception "is a limiting construction of the statute defining federal diversity jurisdiction"). The Supreme Court's holding in *Ankenbrandt* was based largely on its construction of 28 U.S.C. § 1332. *See* 504 U.S. at 700–03, 112 S.Ct. 2206.

This case neither involves "the issuance of a divorce, alimony, or child custody decree" nor is brought under diversity jurisdiction. Instead, the declaratory relief is sought pursuant to federal question jurisdiction and bears only on Tomas' statutory entitlements to copyright ownership interests as Gillespie's child under the Copyright Act. Therefore, the "domestic relations" exception does not apply.

her father. Defendants argue that Tomas was aware of the facts surrounding her potential claim and could have brought the instant action any time after she turned 21 in 1979. Defendants contend that upon the most generous view of the facts, Tomas' claim began accruing in January of 1993, when Gillespie died and shortly thereafter, Gillespie's attorney Elliott Hoffman did not allow Tomas to attend Gillespie's private funeral and was quoted in *USA Today* as saying that Gillespie had no children. (Ex. B to Defs.' Reply) In the same article, Gillespie's publicist Virginia Wicks was quoted as saying that she had no reason to believe Tomas' claim of paternity. (*Id.*) Hence, defendants contend, Tomas was put on notice at that time that her claim of paternity had been repudiated. Because more than seven years passed before Tomas brought the instant action, defendants contend that her claims are barred by the three-year statute of limitations under the Copyright Act.

Tomas responds that her copyright claims do not "accrue at a single moment in time." (Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") at 2) Instead, "each copyright is an individual statutory entitlement the deprivation of which triggers the accrual of a separate and distinct claim of rights." (*Id.*) According to this premise, Tomas' claims accrue as to each renewal copyright accrues when each of those copyrights enters its renewal term—*i.e.* 28 years from the year in which the copyright was "originally secured." 17 U.S.C. § 304(a)(1). She claims that she cannot be "injured (or have any reason to believe she is injured)" until "she has acquired a vested right that gives her a legal entitlement." (Pl.'s Opp'n at 2) Hence, according to Tomas, her claims are timely as to nine copyrights that "vested" within three years of the date she filed the instant action because she "only became aware, when each of her rights vested, that she possessed a legal right that defendants would not honor" and that "the vesting of her rights and the accrual of her related claims coincided." (*Id.*)

Tomas concludes further that "no amount of delay by an author's child in asserting a renewal right extinguishes the right, but only limits the claims to a share of the earnings derived from those copyrights during and subsequent to the three-year period immediately preceding the commencement of the action." (Pl.'s Opp'n at 10) In essence, she argues that "however long she waited to first assert her rights, [she] should still be entitled to recover her ratable share of income derived from these renewal copyrights during and subsequent to the three year period immediately preceding this action." (*Id.*)

Copyrights "originally secured" before 1978 endure for an original term of 28 years and for a renewal term of 67 years. *See* 17 U.S.C. § 304(a)(1). If the author dies before the renewal term commences, the author's statutory successors (widow, widower, children, executors or next of kin) obtain the renewal term. *See* 17 U.S.C. § 304(a)(1)(C)(ii)-(iv).

Tomas relies on *Stone v. Williams,* in which the Second Circuit held that a failure to bring a declaratory action for rights to copyright royalties within the three-year statutory period did not bar the action as a whole. The plaintiff in that case was Cathy Stone, the out-of-wedlock daughter of country music singer Hank Williams. Stone was adopted at a young age and throughout her childhood was entirely unaware of her possible relationship to Williams. In 1973, when Stone was 20 years old, her adoptive mother told her of the possibility that she might be Williams' daughter. In 1979, Stone notified the Alabama Department of Pensions and Security that her adoptive mother had told her that Williams might be her natural father.

In 1985, she sued for her ownership rights to copyrights held originally by Williams and upon renewal by Williams' son, widow, and various assignees. Judge Keenan dismissed the case on the ground of laches, *see* No. 85–7133, 1988 WL 96091 (S.D.N.Y. Sept.7, 1988); the Second Circuit affirmed the dismissal. 873 F.2d 620, 626 (2d Cir. 1989) (*"Stone I"*). The Court concluded that Stone was on notice of the possible relationship and potential copyright claims no later than October 1979. *See* 873 F.2d at 624.

While a motion for rehearing was pending before the Second Circuit, the Alabama Supreme Court decided a parallel case determining that Stone was Williams' daughter and that defendants—Williams' estate and the estate's lawyers—had fraudulently concealed from Stone her identity as Williams' daughter. Because of that fraudulent concealment, the Second Circuit held upon rehearing the case that the defendants could not invoke laches, reversed its previous decision, and remanded to the district court. 891 F.2d 401, 404 (2d Cir. 1989) (*"Stone II"*). On remand, the district court dismissed the case on the ground that it was barred by the three-year statute of limitations under the Copyright Act. 766 F.Supp. 158 (S.D.N.Y.1991). In its third encounter with the case, the Second Circuit held that although the statute of limitations for Stone's claim had started accruing in 1979, the entire action was not barred. The Court likened copyright infringement actions to actions to recover royalties on renewal copyrights. The rule that "each act of infringement is a distinct harm giving rise to an independent claim for relief" applied to copyright renewals, such that "[e]ach time the holder of a copyright renewal is deprived of his or her statutory entitlement, for example, by non-payment of royalties, a distinct harm is done to the owner's property interest." 970 F.2d at 1049–50 (*"Stone III"*). The Court held that the plaintiff's suit was

"timely insofar as relief it sought for defendants' failure to remit to her a proportionate share of royalties received within three years of suit." *Id.* at 1051.

Four years later, the Second Circuit in *Merchant v. Levy* limited *Stone* to the "narrow proposition that, in certain situations, the statute of limitations will not be applied to defeat the copyright co-ownership claim of an author's relative accruing more than three years before the lawsuit where uncertainty surrounded the relative's status as a member of the author's family" and that in such cases, "if the relative prevails on the merits and if the equities permit, the Court will grant the relative a declaration of copyright co-ownership, but permit damages only for the period starting three years prior to the suit." 92 F.3d at 56 (citing *Stone*, 970 F.2d at 1051). *Stone*, the Court observed, was based on "highly idiosyncratic facts" and "[did] not insulate all civil actions under the copyright law from the general three-year statute of limitations." *Id.* Concluding that "uncertainty" over status was absent in a case where a "co-author knows that he or she jointly created a work from the moment of its creation," the Court held that the plaintiffs claiming to be co-authors in the copyrights at issue were "time-barred three years after accrual of their claim from seeking a declaration of copyright co-ownership rights and any remedies that would flow from such a declaration." *Id.* (citing *Zuill v. Shanahan*, 80 F.3d 1366, 1369 (9th Cir.1996)).

Unlike the plaintiff in *Stone*, Tomas did not delay filing suit because of any "uncertainty" over the issue of paternity. Nor does this case involve the "idiosyncratic facts" of a campaign waged by copyright owners to keep a potential co-owner in the dark about her stake. Tomas has a New York Family Court document referring to Gillespie as her father, as well as an agree-

ment that he would support her until she reached majority. (Exs. 3–5 to Declaration of Peter Herbert ("Herbert Decl.")) She testified to the effect that she knew of the factual grounds of her co-ownership claim well before 1997. *See, e.g.,* Tomas Dep. at 12, 25–26, 80–81; *see also Margo v. Weiss,* 213 F.3d 55, 60 (2d Cir.2000) (plaintiffs' own deposition testimony revealed that they knew of facts surrounding their co-authorship claim before the three-year accrual period). In particular, her repeated public claims that she was Gillespie's daughter both before and after Gillespie's death belie any "uncertainty" on her part about her paternity. (Exs. 5 and 6 to Tomas Decl.; Tomas Dep. at 42, 113)

The *Merchant* Court's limitation of *Stone*'s "rolling three-year period," 3 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright ("Nimmer")* § 12.05[C] at 12–143 (2004), is consistent with the Copyright Act's goal of "enhancing predictability and certainty of copyright ownership," *Cmty. for Creative Non–Violence v. Reid,* 490 U.S. 730, 749, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), and "the principles of repose integral to a properly functioning copyright market." *Merchant,* 92 F.3d at 56–57; *accord Playboy Enters. v. Dumas,* 53 F.3d 549, 558–59 (2d Cir.1995). Those principles weigh against permitting Tomas to seek a declaration of ownership in renewal copyrights well after the three-year limitations period has expired. *See Zuill,* 80 F.3d at 1371 ("It is inequitable to allow the putative co-owner to lie in the weeds for years after his claim has been repudiated, while large amounts of money are spent developing a market for the copyrighted material, and then pounce on the prize after it has been brought in by another's effort.").

"A claim for a declaratory judgment of co-ownership and the relief ancillary to such a claim is a civil action, and '[n]o civil action shall be maintained . . . unless it is commenced within three years after the claim accrued.'" *Id.* (quoting Section 507(b)). The primary remedy she seeks is a declaration that she is Gillespie's natural child and a co-owner of the renewal copyrights. Without that declaratory relief, none of the subsidiary remedies that flow from it—an accounting, damages, a constructive trust, and a permanent injunction with regard to the termination interest—are available. *See* 3 *Nimmer* § 12.05[C] at 12–142; *Carell v. Shubert Org., Inc.,* 104 F.Supp.2d 236, 253 n. 14 (S.D.N.Y.2000) ("[t]he remedy of an accounting requires a declaration of co-ownership"); *see also Zuill,* 80 F.3d at 1369. Hence, because Tomas' action began to accrue upon defendants' plain repudiation in 1993 of Tomas' claim to paternity and co-ownership, the entire action is time-barred.

B. Equitable Tolling

In the alternative, Tomas argues that the statute of limitations should be tolled under what appears to be a theory of either duress or equitable estoppel:

[She] was unable to commence this action by reason of the traumas that she continued to suffer after her father's death as a result of Dizzy Gillespie's insistence over 35 years that any public assertion of her identity would irreparably injure her father's career and cause a severance of their relationship; the psychological impediments to acting in her own self interest resulting from having to deny her real 'self' for so many years; the campaign conducted by Gillespie's widow and her representatives immediately upon [Gillespie's] death in January, 1993 to discredit the plaintiff and keep her firmly in the closet by, among other things, preventing her from attending her father's funeral, issuing press releases to the effect that Gillespie had no children, demanding that the media refrain from referring to

plaintiff as Gillespie's daughter and threatening not to permit the release of Gillespie's last recordings at the Blue Note in New York—all of which did not abate until the summer of 1997 when Gillespie's last recordings at the Blue Note were finally allowed by the defendants to be released to the public.

(Pl.'s Opp'n at 11) In addition, Tomas argues that the statute of limitations should be tolled because:

[d]uring the period February 1, 1998 through December 16, 1999, plaintiff had retained counsel who conducted an investigation of plaintiff's claims and entered in to continuous settlement negotiations with the defendants' legal representatives that resulted in a settlement agreement with respect to certain of the plaintiff's claims.

(*Id.*)

■ A defendant may be equitably estopped to assert the statute of limitations as a defense "in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused [the plaintiff] to delay in bringing his lawsuit." *Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir.1995) (quoting *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 50 (2d Cir.1985)); *see also Keating v. Carey*, 706 F.2d 377, 382 (2d Cir.1983). "To invoke equitable estoppel, a plaintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment." *Buttry*, 68 F.3d at 1493 (citing *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984)).

■ Tomas has shown neither a misrepresentation nor reasonable reliance. Equitable estoppel applies only when the defendant "has taken active steps to prevent [the plaintiff] from suing in time." *Carell,*

104 F.Supp.2d at 250. Whatever alleged efforts defendants made to discredit Tomas' claim that she was Gillespie's daughter, she engaged in a similar competing campaign in the media and in her commercial efforts. Moreover, a letter from attorney Raoul Felder to Tomas, dated April 20, 1992—shortly after Gillespie had been hospitalized—indicates that she sought "to commence an action on [her] behalf with respect to establishing Mr. Gillespie as [her] father." (Ex. D to Defs.' Reply). Such conduct belies Tomas' claim that she relied on misrepresentations by defendants such that she was prevented from bringing her lawsuit before expiration of the statutory period.

■ Duress is available to toll a statute of limitations only where duress is part of the gravamen of a plaintiff's claim. *Cullen v. Margiotta*, 811 F.2d 698, 722 (2d Cir.1987); *see also Day v. Moscow*, 955 F.2d 807, 812 (2d Cir.1992). In order to be sufficiently connected to the underlying claim, the duress experienced by the injured party must have been operating at the time the original claim arose and must be continuous. *See Cullen*, 811 F.2d at 722 (plaintiffs who made payments to defendant-employers' political party under duress could similarly feel forced to restrain from filing suit until duress dissipated).

■ Regardless of when the conduct complained of occurred, Tomas does not show that defendants exercised dominion over either her mind or in any other manner deprived her of her freedom of will. *See Overall v. Estate of Klotz*, 52 F.3d 398, 404–05 (2d Cir.1995). At least since 1986, she has not hesitated to claim publicly that she is Gillespie's daughter, despite defendants' attempts to discredit her claim. Also, the April 20, 1992 letter from Felder to Tomas defeats any claim of duress.

■ Likewise, Tomas' settlement negotiations with defendants do not justify a delay in suit. "A court may estop a defendant from asserting a statute of limitations defense if the defendant's conduct induced the plaintiff to postpone bringing suit on a known cause of action." *Beneficial Capital Corp. v. Richardson*, No. 92–3785, 1995 WL 324768, at *5 (S.D.N.Y.1995). The plaintiff must show that the defendant's conduct was designed to mislead the plaintiff and that the plaintiff relied on that conduct in failing to commence the action within the limitations period. *Id.* However, the mere existence of ongoing settlement negotiations is insufficient to estop a party to assert the statute of limitations as a defense. *Id.* Tomas has made no allegation of misconduct in connection with the settlement negotiations.

Defendants' laches argument need not be addressed. Accordingly, defendants' motion for summary judgment as to all relief is granted.

\*       \*       \*       \*       \*       \*

For the reasons set forth above, defendants' motion for summary judgment is granted.

SO ORDERED.